## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

S. & R. R. R. Co. v. Supervisors of Norfolk County.

April 21st, 1887.

1. *Taxation—Railroad companies—Charter.*—Property of a railroad company is taxable like all other property unless exempted by its charter.
2. Idem—*Case at bar.*—Charter of P. & R. R. R. Co. in 1832, exempted its property from taxation, which exemption was not to be taken away without its consent.   Under act of March 11th, 1837, the company accepted benefits from the legislature on condition that it reserved the right, when it should be deemed proper, to levy a tax on the company's property.   Under act of March 10th, 1847, that company was succeeded by the S. & R. R. R. Co. in all its privileges and obligations. By act of July 25th, 1880, the board of supervisors was empowered to levy a tax for county purposes upon any railroad running through its county, and the basis of assessment was specified.   As so empowered, the supervisors of Norfolk county levied such tax on the S. & R. Railroad, against which that company claimed exemption under the charter of its predecessor.

Held:

   The S. & R. R. R. Co. is liable to the tax.

Appeal from decree of circuit court of Norfolk county, entered January 2d, 1886, in an injunction suit wherein The Seaboard and Roanoke Railroad Company was plaintiff, and the board of supervisors of Norfolk county and George A. Wilson, treasurer, and B. F. Adams, deputy treasurer of said county, were defendants.   The object of the injunction was to restrain the treasurer from selling property of the plaintiff levied on for taxes assessed by the said board for county and school purposes for the year 1881.   The circuit court dissolved the injunction with costs to the defendants.   The plaintiff obtained an appeal and *supersedeas*.   Opinion states the case.

*Walke & Old*, for the appellant.

*J. F. Crocker*, for the appellees.

Lacy, J., delivered the opinion of the court.

The question involved in the case is the power of the appellee, the board of supervisors of Norfolk county, to tax the appellant company, the Seaboard & Roanoke Railroad Company. The general assembly of Virginia passed an act which was approved March 13, 1877, (Acts 1876–77, p. 138,) by which it is provided that every railroad company not exempted by virtue of its charter from taxation shall be taxed, and the act prescribes how the property of the same shall be assessed and taxed for State purposes. By an act passed July 25, 1880, (Acts 1879–80, p. 82,) it is provided that the board of supervisors of any county should levy a tax for county purposes upon any railroad passing through such county, the same to be based upon the assessment per mile of the same property made for State purposes, and also that a tax shall be laid upon the depots, depot grounds and lots, station buildings, and other real estate of a railroad which passes through such county.

Accordingly the appellee levied a tax for county purposes upon the appellant company for the year 1881. The appellant company refused to pay the taxes assessed against it, and the treasurer of the county levied upon the cars of the said company, whereupon the said railroad company sued out an injunction from the circuit court of the county to enjoin and restrain the sale under the levy upon the ground that the said railroad company was exempt from taxation by virtue of its charter. The injunction having been awarded, upon the hearing was dissolved, and the railroad company appealed to this court.

The property of this company is liable to be taxed for

State and county purposes in like manner as all other un-exempted property in the State, unless the said company can maintain its pretension that it is exempt from taxation by reason of its chartered exemption. The Portsmouth & Roanoke Railroad Company, of which the appellant company is the successor, was chartered in March, 1832; and its charter provided for an exemption from any public charge or tax whatever. This exemption was not to be taken away from the company without its consent. By an act passed March 14, 1837, (Acts 1836–37, p. 125,) certain benefits were granted to the said Portsmouth & Roanoke Company, and, if the said company accepted these, the chartered exemption was taken away. This act the company refused to accept, and so, on June 23, 1837, (Acts 1836–37, Extra Sess. p. 7,) this act was amended so as not to revoke the chartered exemption by the terms of that act, but the legislature reserved the right hereafter, when it should be deemed proper, to levy a tax, etc., on the company's property.

By an act passed March 31, 1838, (Acts 1838, p. 103,) the board of public works was authorized to loan a certain sum of money to the company, which if it accepted, then the company should come under and be subject to the provisions of an act passed March 11, 1837, (Acts 1836–37, p. 101,) known as the "General Railroad Law;" that is, that this company should come into the class of railroads chartered under the general railroad law which held repealable charters; for by the thirty-fifth section of that act it is provided that "any part of any charter or act of incorporation granted agreeably to the provisions of this act shall be subject to be altered, amended, or modified by any future legislation as to them shall seem proper," except that the toll rates and the rights of property should be respected. On the twenty-fifth of February, 1846, (Acts 1845–46, p. 90,) the sale of the said railroad was provided for to the appellant company. But under that act, as was

authorized under certain circumstances, the board of public works of the State became the purchaser. By the act of March 10, 1847, (Acts 1846–47, p. 105,) the board of public works was authorized to lease or sell the said road, and on the twenty-eighth of June, 1847, the same was sold to the trustees of the town of Portsmouth, and on the fifth of July following, the said trustees sold the said road to the appellant company. By the terms of the preceding act of February 25, 1846, it was provided that "the purchasers *ipso facto,* by the purchase, shall become a body politic and corporate by the name and style of the Seaboard and Roanoke Railroad Company, and *shall* hold, use, enjoy, and employ the road and all the other property and effects, of every nature and kind as aforesaid, of the present company, with all the rights, franchises, privileges, and immunities granted to and conferred upon it at any time heretofore by this State, and the State of North Carolina, in as ample a manner as the legislature of this State can confer them, subject in all respects and in all things to all the duties, regulations, and penalties required, prescribed, and enjoined by any law or laws now in force respecting the present company;" and subject to the general railroad law cited above.

The appellant, having become the successor of the old company under the foregoing act, became entitled to all the franchises and immunities which the old company enjoyed and held at the time of the transfer, and subject to the same regulations prescribed by existing laws. The appellant company claims that this transfer carried with it all the grants made to the old railroad, whether repealed or not, and however modified, and thus remitted it to its original chartered privilege of exemption from taxation. The effect of this contention is that the new company can claim such enactments in the past as it may select, and reject others; that is, keep the chartered exemption from

taxation, and also the benefits conferred by the legislature and accepted by it in lieu of this chartered privilege. We cannot see any foundation whatever for this contention. The object and plain effect of the charter granted the new company was to transfer to it the old charter,—the old charter as it was in the day of the transfer, with all the rights it had at any time acquired and still had. It would be most inconsistent and irrational to so construe this act as to revive numerous contradictory enactments, one over-ruling another.

The law clearly put the old company out, and the new company into existence, one taking the place of the other completely and in all respects. The effect therefore is that the new company, the appellant here, fell into its place, like the old company, in the class of railroads holding repealable charters,—charters liable to be altered, amended, and modified at any time at the pleasure of the legislature. And by the terms of the act of June 23, 1837, *supra*, the general assembly of Virginia reserved the right to levy a tax on the property, etc., of this company. This has been done by the act of March 13, 1877, as to the state taxes, and by the act of July 25, 1880, as to county taxes, both cited above.

We think, therefore, that the decree of the circuit court of Norfolk county was plainly right, and must be affirmed.

Hinton, J., concurred in the result.

Richardson, J., dissented.

Decree affirmed.