IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

## Richmond.

THE ATLANTIC & DANVILLE RAILWAY CO. v. LYONS, TREASURER, AND ANOTHER.

December 11, 1902.

1. RAILROADS—*How Taxable by Counties.*—Under existing statutes (Code, sec. 833, Acts 1891-'2, p. 428) the boards of supervisors of the several counties through which railroads pass, in assessing taxes for county purposes on the property of railroad companies, is not restricted to a tax based on the assessment per mile made by the State for its purposes upon the number of miles of road within their respective counties, but may, in addition thereto, assess taxes on the depots and grounds, and other real and personal property of such companies, located within their respective counties.

2. RAILROADS—*Rolling Stock—Where Taxable.*—In the absence of legislation to the contrary, the rolling stock of a domestic railroad company is properly taxable in the county of its domicile, which is where it has its chief office.

3. STATUTES—*Construction—Effect of Practical Construction.*—The practical construction put upon a statute, throughout a number of years, by those charged with its execution, fortified by the implied recog-

VOL. CI—1

nition of that construction by the highest court of the State, and the silent acquiescence therein of those affected thereby, will, in case of doubt, be controlling.

Appeal from a decree of the Circuit Court of Norfolk county, pronounced December 14, 1900, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The precise contention of the appellant will probably be best understood by the following statement of facts taken from the petition for the appeal:

"The Atlantic and Danville Railway Company is a railroad corporation, chartered by the State of Virginia.

"Its line of road runs from West Norfolk, in Norfolk county, Virginia, to Danville, in this State, with a loop through three counties in North Carolina, and with several branches in Virginia.

"Its principal office is, and during the whole of the year 1895, the time mentioned in the bill, was, in the county of Norfolk.

"The Board of Public Works, in assessing the railroad properties in the State for the year 1895, assessed the Atlantic and Danville Railway Company, with mileage of its railroad lying in the county of Norfolk, as follows: 6.95 miles at $8,000 per mile, and 9.98 miles at $5,000 per mile, and stated in its assessment that the value of rolling stock was $277,510; the value of depots, depot grounds, station buildings and fixtures and machine shops in the county of Norfolk $8,850, and that the value of stores in the said county was $8,965.27.

"The rate of the Norfolk county levy for 1895 was 80 cents on the $100 of property.

"The Board of Supervisors of Norfolk county undertook, for

the year 1895, to apply the above-mentioned rate to the following property of the Atlantic and Danville Railway Company, to-wit:

Mileage—

| | | |
|---|---:|---:|
| 6.95 miles at $8,000 per mile.................\$ | 55,200 | 00 |
| 9.98 miles at $5,000 per mile................. | 49,900 | 00 |
| Depots and grounds....................... | 8,850 | 00 |
| Stores .................................. | 8,965 | 27 |
| Rolling stock ............................ | 277,510 | 00 |
| Total ...............................\$ | 400,425 | 27 |

"The county tax on this basis would amount to $3,203.40, and a bill for that amount was presented to your petitioner by the county treasurer and payment demanded.

"The company promptly paid to the treasurer the sum of $840.80, part of the above-mentioned bill, the amount so paid being in full of the taxes due the county at the rate of 80 cents on the $100 on the basis of the assessment per mile made by the State for its purposes, and furnished by the Auditor of Public Accounts to the said Board of Supervisors on the company's property situate within the limits of the county of Norfolk, but refused to pay the balance of the bill, amounting to $2,262.60, which was arrived at by imposing the rate of 80 cents on the $100 on the alleged value of the depots and grounds, rolling stock and stores as per above statement.

"This refusal was based on the ground that the Board of Supervisors had no right to levy a tax on these excepted properties.

"As the treasurer of the county was about to take steps to levy on the petitioner's property in order to collect the above-mentioned amount of $2,262.60, this suit was brought on the 11th day of December, 1895, and an injunction awarded.

"Upon the hearing of the case, the Circuit Court, being of opinion that the Board of Supervisors had the right to levy the taxes complained of, entered an order on the 14th day of December, 1900, dissolving the injunction and dismissing the bill.

"This is the decree complained of here.

"The question in the case is whether the county of Norfolk, through its Board of Supervisors, has the authority of law to tax the rolling stock, depots and stores of the Atlantic and Danville Railway Company, in addition to the taxes the company has already paid.

"The contention of the county is that it has this right as to the rolling stock and stores, by reason of the location within its borders of the company's principal office, and as to the depots, because they are actually located within the county.

"The contention of the Atlantic and Danville Railway Company is that the Board of Supervisors, in taxing the property of railroads, is restricted to the 'assessment per mile made by the State for its purposes and furnished by the Auditor of Public Accounts to said board;' that the rolling stock, etc., either is included in such 'assessment per mile' or is not so included; and, if included, the tax has been paid, and, if not included, then the county of Norfolk is without power, under the law, to levy a tax thereon."

*Alfred P. Thom*, for the appellant.

*R. C. Marshall* and *Frank L. Crocker*, for the appellees.

KEITH, P., delivered the opinion of the court.

The Atlantic and Danville Railway Company is a Virginia corporation, whose principal office is in the county of Norfolk, and whose lines pass through a number of counties in this State. The Board of Public Works, in assessing railroad prop-

erties for the year 1895, assessed the Atlantic and Danville Railway Company with mileage lying in the county of Norfolk as follows: 6.95 miles at $8,000 per mile, and 9.98 miles at $5,000 per mile, and stated in its assessment that the value of rolling stock was $277,510, the value of depots, depot grounds, station buildings, and fixtures and machine shops in the county of Norfolk, $8,850; and that the value of stores in the said county was $8,965.27.

The Board of Supervisors of Norfolk county, for the year 1895, levied a tax upon this property of 80 cents upon the $100, making a total of taxation $3,203.40. Of this sum, the company paid to the treasurer the sum of $840.80, being in full of the taxes due the county at the rate of 80 cents on the $100 on the basis of the assessment per mile made by the State for its purposes, and furnished by the Auditor of Public Accounts to the Board of Supervisors on the company's property situated within the limits of the county of Norfolk, but refused to pay the balance of the bill, amounting to $2,262.60, which was arrived at by imposing the rate of 80 cents on the $100.00 on the alleged value of the depots and grounds, rolling stock, and stores belonging to the company. The treasurer of the county was about to enforce the collection of this sum against the property of the railway company when it filed its bill in the Circuit Court of Norfolk county, setting forth the above facts, and claiming that the Board of Supervisors had no right to enforce the collection of the balance claimed by it to be due. Upon the hearing of the cause, the Circuit Court dissolved the injunction and dismissed the bill, and the case is now before us upon an appeal from that decree.

The power to levy taxes is conferred upon the Board of Supervisors of the counties by the second subdivision of section 833 of the Code, which reads as follows:

"To fix the amount of county levies for the ensuing year, to

order the levy on all persons over the age of twenty-one years, and on all property assessed with State tax within the county; to order the levy on the real and personal property of telegraph and telephone companies, and railroad companies and their telegraph lines, which pass through their respective counties, except such as are exempt from county or other local taxes, based upon the assessment per mile made by the State for its purposes, and furnished by the Auditor of Public Accounts to said board."

By an act passed March 27, 1876 (Acts 1875-'6, p. 162), it is provided that "every railroad and canal company shall report annually, on the first day of June, to the Auditor of Public Accounts the estimated value of its real and personal property of every description as of the 1st day of February of each year, classifying the same under the following heads." Then follows an exhaustive classification of every species of property owned by railroad companies.

The next act which it is proper to notice is that of April 22, 1882 (Acts 1881-'2, p. 506), which requires railroad companies to show "particularly in what county or corporation such property is located."

There was no substantial change in the law bearing on this subject from that time down to February 16, 1892 (Acts 1891-'2, p. 428), which provides that the report of the company shall show "particularly in what county or corporation the principal office or agency of such company is located in this State, and in what county or corporation such property is located." It further provides that "it shall be the duty of the secretary of the board (Public Works) to furnish . . . a certified copy of the assessment of taxes made by the Board of Public Works of such company's property which shall definitely show the character of the property, its location, and value for purposes of taxation."

In 1878 this court decided the case of *Va. & Tenn. R. R. Co.*

v. *Washington County*, 30 Gratt. 471, in which it was held that "the Constitution of the State does not authorize the county authorities to assess property for taxation and levy taxes upon it independent of the action of the Legislature; secondly, under the present legislation of the State the county authorities can only levy a tax upon such property as by law is assessed with State taxes in the county; and, thirdly, under the present legislation of the State, county authorities cannot levy a tax on the real estate of railroads in the county, either for county, township, school or road purposes."

As we have seen, the statute law was amended at the session of 1881-'2, and from that time to this the counties have assessed and levied taxes on railroads, including not only the tracks, but their real and personal property.

A number of cases have come to this court in the meantime in which, for various reasons, railroads have called in question the exercise of the power of taxation. In most, if not all, of those cases, some question more important, perhaps, was involved, but in several of them the tax bill embraced items of taxation coming within the class the right to tax which is denied by the appellant in this case.

For instance, in *Balto. & O. R. R. Co.* v. *Koontz*, 77 Va. 698, for purposes of State taxation for 1881, no assessment was made on railroads until September, 1881, when the railroads in the county of Shenandoah were assessed by the Board of Public Works at $15,000 per mile. Consequently, the assessment of $5,000 per mile of those railroads, made July 25, 1881, by the supervisors of that county, and the levy of taxes thereon, for that year, was *ultra vires*, and void. Thereupon, the Board of Supervisors, on April 17, 1882, levied a tax upon the B. & O. railroad within that county for the year 1881, the railroad company resisted it, and the case ultimately found its way to this court. The chief question there was as to the right of the

county to levy a tax for the preceding year, but in the tax bill is embraced depots, depot grounds, lots, stations and grounds, etc., valued at $3,000. The argument of the court is addressed to the principal proposition, but the decree which was rendered could only have been arrived at by maintaining the right of the county to levy a tax upon property which it is claimed in this record is not the subject of county taxation.

In *Shenandoah V. R. R. Co.* v. *Supervisors of Clarke County*, 78 Va. 279, the principal question, it is true, was whether the tax levied in the county of Clarke on railroads was higher than for other species of property in the county, and if so, whether the tax was legal; but the court, in the course of its opinion, uses the following language:

"Prior to the act of 1880, the supervisors had no authority to assess the property of railroads, but by that act, which was passed subsequently to the decision of this court in the *Va. & Tenn. R. R.* v. *Washington County*, it is enacted that it shall be lawful, and authority is given to the supervisors of a county, to levy a tax on the roadway and track, depots, depot grounds and lots, station buildings, and other real estate of a railroad company, whose road passes through such county; such tax to be equal to the tax imposed upon other property for the county and school purposes, and based upon the assessment per mile of the same property made by the State for its purposes."

In the case of *Norfolk & W. R. R. Co.* v. *Supervisors of Smyth County*, 87 Va. 521, 12 S. E. 1009, the power of the Board of Supervisors of a county to levy and collect taxes on railroad property within its limits was called in question, and Judge Richardson, who delivered the opinion of the court, after quoting from *Va. & Tenn. R. R. Co.* v. *Washington County*, supra, proceeds as follows:

"That decision, doubtless, called the attention of the Legislature to the subject, and to the necessity for legislation to render

operative section 1, Art. X., of the Constitution, which provides for an equal and uniform tax upon all property to be provided by law; and, realizing the inequality and injustice resulting from a want of needed legislation, the Legislature passed the act of February 27, 1880 (Acts 1879-'80, ch. 106, p. 82, before referred to), by which it is provided 'that it shall be lawful, and authority is hereby given to the supervisors of a county to levy a tax on the roadway and track, depots, depot grounds and lots, station buildings, and other real estate of a railroad company whose road passes through such county. Such tax to be equal to the tax imposed upon other property for county and school purposes, and based upon the assessment per mile of the same property made by the State for its purposes.' " *Prince George County* v. *Atlantic M. & O. R. R. Co.*, 87 Va. 283, 12 S. E. 667.

In *New York, &c. R. Co.* v. *Supervisors*, 92 Va. 661, 24 S. E. 221, it was held that "a levy by a board of supervisors for district school purposes on the property of a railroad company, as a whole, within a county, without reference to what part thereof is located in the several districts, or so as to show the amount levied for each district is void." In that case, the taxes were levied on the roadway, track, buildings, personal property and telegraph lines, and the court, in the course of its opinion, uses the following language: "A tax levied by the Board of Supervisors on the property of the railroad company for county purposes was held by this court not to be valid, on the ground that the authority of the county Board of Supervisors to assess property for taxation and levy taxes upon it was dependent upon the action of the Legislature, and that the legislation of the State at that time did not authorize county authorities to levy a tax on real estate of railroads in the counties, either for county, township, school, or road purposes." *Va. & Tenn. R. R. Co.* v. *Washington County*, 30 Gratt. 471.

VOL. CI—2

"To meet the difficulties in the way of reaching the property
of railroad companies by taxation for county purposes, as dis-
closed by this decision, the Legislature passed an act authoriz-
ing the boards of supervisors of the respective counties to levy
a tax for county purposes upon the property of railroad com-
panies, based upon the assessment of the Board of Public
Works, certified down to the boards of supervisors of the several
counties. (Acts of 1879-'80, p. 82.) And by a number of de-
cisions following the passage of this act it has been held that a
levy for county purposes, under the provisions of the act, is a
valid levy." The cases referred to in this opinion are cited, and
others.

The Constitution of the State at that time required that "all
taxation, whether imposed by the State, county, or corporate
bodies, shall be equal and uniform, and all property, both real
and personal, shall be taxed in proportion to its value, to be as-
certained as prescribed by law;" and it was doubtless the pur-
pose of the several acts which we have mentioned to carry that
salutary provision of the Constitution into effect, and make the
property of railroads bear their just proportion of taxes levied
by the counties as well as by the State. The acts of the Legis-
lature were, perhaps, not as clear, and the power to tax was not
conferred in language as explicit as is to be desired, but we can-
not say in the face of the uniform interpretation placed upon
the several acts by the Boards of Supervisors charged with
their execution, which have continuously, since the passage of
the act of 1881-'82, levied taxes upon all the property of rail-
roads, that there was no ground for such construction. The
contention becomes still more difficult to maintain in the light
of the numerous cases we have cited in which that construction
has received the sanction of this court, and the difficulty be-
comes almost insurmountable when we find that during all that
period such taxes have been paid by the railroads.

"The practical construction given to a statute by public offi-cials, and acted upon by the people, is not only to be considered, but in cases of doubt will be regarded as decisive. It is al-lowed the same effect as a course of judicial decision. The Legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction."

"It is a rule of construction that, if a statute is of doubtful import, a court will consider the construction put upon the act when it first came into operation, and that construction, after lapse of time, without change either by the Legislature or ju-dicial decision, will be regarded as the correct construction." *Smith* v. *Bryan, Mayor,* 100 Va. 199, 40 S. E. 652.

We are not unmindful of the salutary principles announced in *Supervisors* v. *Tallant,* 96 Va. 723, 32 S. E. 479, that sta-tutes which levy duties or taxes upon citizens are to be con-strued most strongly against the government and in favor of the citizen, and their provisions will not be extended, by im-plication, beyond the clear import of the language used; that property can only be taxed in the mode prescribed by law, and it is the duty of the Legislature to pass the necessary laws to carry into effect the constitutional provision relating to taxation, and that, in the absence of any legislative enactment on the subject, property cannot be taxed at all; but, after a careful consideration of the facts of this case, the statutes bearing upon it, the uniform and long-continued construction given to those statutes by the officials charged with their execution, the recog-nition of the correctness of that construction, which is, to say the least, strongly implied in numerous decisions of this court, and that the exercise of the power, by which the burden of taxation under existing laws has been imposed upon railroads has been acquiesced in and submitted to by them, leaves us no room to doubt, viewed in the light of established rules of con-

struction, that there is no error in the decree of the Circuit Court which upholds the power of taxation in the case under consideration.

We have said that this exercise of power has been acquiesced in and submitted to by the railroads. If it has ever been called in question, then it can only have been in the cases which we have cited, and those cases, having uniformly upheld the power of taxation, become authorities which are decisive of the case. If, however, as appellants contend, the question was not considered in those cases, then the conclusion follows that the construction placed upon the act by the officials charged with its execution has been acquiesced in, or, at least, has not been controverted.

Norfolk county, it appears, is the domicile of the appellant, and it is well settled that the rolling stock is properly taxable at that place. It might be more equitable, perhaps, looking to the interests of the various counties through which the road passes, if the revenue derived from this source were distributed, but in the absence of legislative enactment upon the subject it was properly taxed by the county of Norfolk.

The decree of the Circuit Court of Norfolk county is affirmed.

*Affirmed.*