## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### Curtis v. Hiden and Others.

#### March 11, 1915.

1. Equity Jurisdiction—*Tenant by Curtesy—Suit Against Remainderman—Partition.*—The grantee of a tenant by the curtesy cannot maintain a bill against the remaindermen for a sale of the land against their will where it appears that neither plaintiff nor the defendants are under any disability whatever; there is no obscurity or difficulty as to the title, and the defendants own a vested remainder in fee in the land. The fact that the taxes on the land are onerous and that the life tenant cannot derive a profit without cutting and removing the timber from the land does not alter the case. Equity has no jurisdiction to take the property of one and transfer it to another when neither is under any disability.

2. Tenant by Curtesy—*Suit to Sell Land—Code, Section 2436a—Constitutional Law—Demurrer.*—If section 2436a of the Code (1904) is to be construed as conferring a right upon the life tenant by the curtesy, or in dower, to demand and require a sale of the real estate in which he or she is interested, where all of the parties are *sui juris,* and the estate of the remaindermen is vested, the statute is unconstitutional as an unwarrantable interference with the rights of property, and as denying the equal protection of the laws.

Appeal from a decree of the Circuit Court of Warwick county. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Lett & Massie* and *O. D. Batchelor,* for the appellant.

*S. O. Bland* and *J. G. Hiden,* for the appellees.

36

KEITH, P., delivered the opinion of the court.

The appellant, Curtis, filed his bill in the Circuit Court of Warwick county, in which he shows that Mrs. Virginia R. Chewning, in her life time, was seized in fee of certain tracts of land, containing by estimate 215 acres; that she had been twice married, and by her second husband, who survived her, she had one child, which is still living; that by her will she devised the land to the children of her first marriage, subject to the life estate by curtesy of her surviving husband, H. M. Chewning; that the complainant, Curtis, by deed dated June 2, 1902, bought of Chewning his life estate in said tracts of land, and has been and now is in possession of them; that by deed dated July 1, 1910, the devisees under the will of Virginia R. Chewning conveyed their interest in remainder to R. E. Richardson and P. W. Hiden; that Chewning, whose grantee is entitled to the possession and usufruct of the land during his lifetime, is now fifty-five years old, and his expectancy is, therefore, seventeen years; that all the land of which he is life tenant, except about fifteen acres, is grown up in timber, mostly old field pines, ranging from saplings to trees of from 12 to 20 inches in diameter; that this timber constitutes the chief value of the land; that the timber is peculiarly valuable for piling and is now of proper size and ready to be cut as such; that it will depreciate in value if allowed to stand and grow during the expectancy of Chewning, when it will be above the proper size for piling; that the smaller trees retard the growth of the timber where they are too thick and should be thinned out and those cut down sold for cord wood; that the growing timber needs scientific cultivation and modern methods of forestry applied to it, which can best be done by one owning the fee simple estate in possession; that piling of the character of that growing upon these lands is now in great demand along the seaboard, and

will bring more if sold now than later on; that by a sale now the interests of all parties will be promoted. The plaintiff further represents that although he has been in possession of the property for over eleven years and keeping and preserving the same from trespass or depredation by others, and has neither cut nor permitted to be cut any timber thereon, and has paid the taxes thereon, the only rental or other income which he has been able to derive therefrom is from six to twelve dollars per annum for the small piece of cleared land, which amount is less than one-fourth of what the taxes amount to; that the taxes have been largely increased by reason of the increased value of the timber, and are now a burden which complainant is compelled to bear, without sufficient revenue therefrom to pay the same. The complainant further avers that the remaindermen, Hiden and Richardson, are both engaged in the pile, wood and lumber business, and are men of large means, and if the said property should be sold, they are amply able to purchase it, and in fact their interests will be promoted by owning it, so as to be able to cut and market the timber to the best advantage; that if, on the other hand, it brings more than they are willing to pay, they, as such remaindermen, will get the benefit thereof. Wherefore, the premises considered, the complainant being remediless save in a court of equity, to which jurisdiction over this subject-matter has been expressly given by statute, files this bill of complaint, and prays that the said P. W. Hiden and R. E. Richardson may be made parties defendant thereto, and required to answer the same, and that all further and general relief may be granted as the nature of his case may require.

To this bill the defendants, Hiden and Richardson, filed their demurrer, which the circuit court sustained and dismissed the bill, and the case is before us upon an appeal awarded by one of the judges of this court.

The only ground of demurrer which we shall consider is "that the act under which these proceedings are sought to be had, to-wit, section 2436-a, Pollard's Code of Virginia, 1904, in so far as it seeks to authorize the sale of lands, the remainder in which belongs to adults under no disabilities, without the consent of such adults, is unconstitutional and void."

We shall not consider the power of the courts to sell lands held by joint tenants, tenants in common, or co-parceners, for the purpose of partition, where partition in kind cannot be had, nor the power of courts to sell lands held in trust, nor of the State, as *parens patriae,* to authorize the sale of contingent remainders. We shall confine ourselves to the precise question presented by the bill of a plaintiff owning a life estate coming into court and asking the sale of the estate held in remainder, where neither plaintiff nor defendants are under any disability whatsoever, where there is no obscurity or difficulty as to the title, but a naked case of an absolute legal title to the life estate in the plaintiff, and a vested remainder in fee in the defendants who are *sui juris* and are opposed to the sale.

There are but two grounds assigned in the bill for invoking the jurisdiction of a court of equity. The first is that the plaintiff, who is a voluntary purchaser from the tenant by curtesy of the life estate, which he now holds, has found the investment unprofitable. He bought with his eyes open. The property is today, or was at the date of filing the bill, in the same condition in which he purchased it. The fact that he has made a bad bargain constitutes no ground for the interposition of a court of equity.

The contention of the plaintiff that the timber on the land should be cut and sold as piling or cord wood, and that scientific cultivation of the timber would inure to the interest of the defendants, is without merit, for the plaintiff has no interest in the standing timber and cannot use or enjoy it

except in the limited degree permitted by law to life tenants for agricultural and domestic purposes connected with the use of the premises. "The right thus incident to every estate for life, unless otherwise stipulated, does not warrant the selling of wood or timber by the tenant, nor the commission of any needless destruction in the premises." 2 Minor's Inst. (3rd ed.) 100.

There is nothing in the bill, therefore, to call into exercise any of the equitable sources of jurisdiction to sell land and the right of the appellant, if it exists, must depend solely upon section 2436-a of Pollard's Code, which provides that "when real estate is held by a party as tenant by the curtesy, or in dower, whether the remainder be vested or contingent, and whether the remaindermen be infants or adults, it shall be lawful for the circuit and corporation courts, or such court having jurisdiction of the subject-matter, upon a bill filed by the party holding such estate by curtesy or in dower, in which bill all persons directly or contingently interested shall be made defendants, to decree a sale of such real estate, or any part thereof, and to invest the proceeds of sale under the decree of the court for the use and benefit of the party so holding the estate, subject to the rights of the remaindermen: provided, however, that the bill of the plaintiff shall set forth the facts which, in his or her opinion, would justify the sale of the said real estate, and shall be verified by the affidavit of the party, and provided the court shall be of opinion that the interests of all parties will be promoted by such sale, and shall so certify in the decree."

This question has never been before this court, but has been passed on by the courts of other States.

In *Gossom* v. *McFerran,* 79 Ky. 236, it was held that section 491 of the Civil Code, in so far as it authorized the sale of real estate upon the petition of the life tenant, in opposition to the wishes of the owner of the fee, where the

latter is not laboring under the disability of infancy, or of unsound mind, was unconstitutional, and that so long as the citizen is under no legal disability to act for himself in the management of his property he is protected by the Constitution from interference on the part of the State. The facts in that case were that a dowress in a house and lot sold and conveyed her interest to another. The house was subsequently destroyed by fire, and the life tenant being unable to rent the lot in its unimproved state, instituted an action under the statute against those who were the owners of the fee in remainder, seeking a sale and reinvestment under the direction of the court. The remaindermen objected to the sale of their interest in the land, and from a decree directing the sale and reinvestment appealed. The court of appeal reversed the judgment of the lower court and remanded the cause, with directions to dismiss the petition, saying: "The only question we will consider is whether section 491 of the Civil Code, in so far as it authorizes the sale of the property of an adult, not under the disability of infancy, and not of unsound mind, is unconstitutional. After a careful consideration and full investigation, we have concluded that the section referred to, and to the extent indicated, is unconstitutional. It operates in effect to take the property of one individual and transfer it to another, when neither is under such disability as to require the guardianship of the courts. Where any of the citizens are incapacitated to act for themselves, it becomes the duty of the State to protect their interests, and it is upon this idea and for this reason that jurisdiction has been conferred upon the courts to sell and reinvest the proceeds of property belonging to such persons when in the judgment of the court it is to their interest. The court acts and consents for them because they cannot act or consent for themselves. But so long as the citizen is under no legal disability to act for himself in the management of his property he is protected by

the Constitution from interference on the part of the State, whether that interference comes directly by legislative act operating immediately upon the property, or intermediately through the courts. There may be cases of tenancy in common, or even of joint tenancy, where the courts can be authorized to sell the property so held, and one of the joint tenants or tenants in common, who is *sui juris,* refuses, without reason, to sell. * * * In all such cases where sales have been sanctioned there was a joint ownership in fee and a joint right of possession, conditions not existing in this case. In addition to these cases, it has been held that when the interest is not vested, but contingent, a sale might be had without the consent of the contingent remainderman."

That case is identical in principle with the one before us. There is no joint ownership in this case; there is no community of interest whatever. The appellant is the absolute. owner of the life estate; the appellees are the absolute owners of the remainder. None of them are under disability, and the life tenant may sell his interest whenever he sees fit, provided he can find a purchaser.

In *Lantz* v. *Massie,* 7 Va. Law. Reg., at p. 544, Prof. Lile, of the University of Virginia, has an instructive note, which deals with the power of the legislature to authorize the courts, at the suit of a life tenant, to sell vested remainders in real or personal estate, whether the remaindermen be infants or adults. The case of *Gossom* v. *McFerran, supra,* is reviewed by him, along with other authorities, and he considers "the reasoning of this case is conclusive of the iniquity of the act, so far as it authorizes the sale of vested remainders, where the vested remaindermen are adults and of sound mind."

In *Powers* v. *Bergen,* 6 N. Y. 366, it is held that the legislature, except in cases of necessity, arising from infancy, insanity or other incompetency, of those in whose behalf it acts, has no power to authorize by special act the sale of

private property for other than public use, without the consent of the owner, the court saying: "The legislature can exercise only such powers as have been delegated to it. * * * The power of making contracts for the sale and disposition of private property of individual owners has not been delegated to the legislature, or to others through or by any agency conferred on them for such purpose by the legislature. * * * The fundamental maxims of a free government seem to require that the rights of personal liberty and private property should be held sacred."

In 3 Washburn on Real Property (2nd ed.), sec. 5, s. p. 539, it is said: "In attempting to define the cases in which a legislature may, by special act, change the ownership of land, or authorize one man to transfer the interest of another in lands, there are certain principles which may be regarded as elemental, which will serve as tests to be applied to the questions as they arise, and in the first place, the power to do this does not depend upon its being by general law or special act. In the first place, where the act is based upon the assumption or exercise of judicial power, it is void, since legislatures are prohibited from the exercise of such powers. In the next place, a legislative act cannot authorize the property of a citizen to be taken from him, through the instrumentality of a sale, or otherwise, so long as he is under no legal disability to manage his own affairs, where the effect is not to convert it to the use of the government, but to transfer it from the original owner to a third person."

In *Ervine's Appeal*, 4 Harris (16 Pa.) 256, 55 Am. Dec. 499, the case was as follows: The testator directed that after the decease of his wife, his executors should rent out his lands, and out of the proceeds his son Daniel should be supported; that none of his real estate should be sold during the life of his son, but that he be supported out of the same; and further provided that after the death of his son, Daniel, then

his real estate should be sold, and all his children receive share and share alike. After the death of the widow an act was passed, at the instance of Daniel, providing that on his application the orphans' court should make an order appointing a trustee to make sale of the said real estate, and to invest the proceeds under the direction of the court, so that the interest thereof shall secure to him that support during his natural life which the will intended him to receive out of the produce of the said real estate, provided that such sale shall be approved by the court; and providing, further, that the annual interest only of the proceeds of sale be paid to Daniel or his trustee, and the principal sum be invested, subject to all the provisions of the will. It was held, that the other parties in interest, being of full age, under no disability, and objecting to the sale, the court below was right in refusing to direct it; that the legislature does not possess the constitutional power, in such a case, to direct a sale against the consent of the other parties in interest who were of full age and under no disability, within the time during which the sale was forbidden by the testator; and that the act in this case was unconstitutional because of its repugnancy to that provision of the State Constitution which declares that no person shall be deprived of his life, liberty or property unless by the judgment of his peers or the law of the land. See *Palairet's Appeal,* 67 Pa. 497, 5 Am. Rep. 450.

In *Kneass' Appeal,* 31 Pa. 87, it was held, that an act of assembly authorizing executors to sell the real estate of one not *sui juris,* and to invest the proceeds upon the trusts declared in the will of the testator, on giving security for the faithful application of the fund, is a constitutional exercise of legislative power; and a purchaser will be compelled to take a title under such an act. But the legislature have no power to authorize the sale of the property of par-

ties *sui juris* and seized of a vested estate in the premises against their consent.

In *Hegarty's Appeal,* 75 Pa. 503, it is held, that the legislature cannot, against the consent of parties *sui juris,* seized of a vested estate, authorize the sale of their real estate. See *Gilpin and wife* v. *Williams et al.,* 25 Ohio St. 283.

Upon the whole case, we are of opinion that if the statute is to be construed as conferring a right upon the life tenant by curtesy, or in dower, to demand and require a sale of the real estate in which he or she is interested where all the parties are *sui juris* and the estate is vested, then the statute is unconstitutional as an unwarrantable interference with rights of property and as denying the equal protection of the laws; that if the statute is to be regarded as merely conferring the power upon the courts to order a sale where the facts set forth "would justify the sale of real estate," to follow the language of the statute, then the bill before us, in our judgment, makes no such case and sets forth no facts which would justify the court in ordering the sale; and, therefore, in either aspect, the judgment of the circuit court sustaining the demurrer to the bill was right and should be affirmed.

*Affirmed.*